Gregory B. Collins (#023158)
Molly Rogers (#028212)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
cmr@kflawaz.com

*Attorneys for Plaintiff*
*Physicians Care Alliance LLC d/b/a PCA Skin*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Physicians Care Alliance, LLC d/b/a PCA Skin, an Arizona limited liability company,<br><br>                    Plaintiff,<br><br>v.<br><br>All Day Beauty, LLC a Florida limited liability company, Jaime Mesa, an individual, both doing business as "All Day Beauty LLC" on the website www.walmart.com, and JOHN DOES 1-10,<br><br>                    Defendants. | Case No. 2:18-cv-02602-BSB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF, FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC § 1125(c); AND RELATED CLAIMS**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Physicians Care Alliance LLC d/b/a PCA Skin ("PCA Skin") brings this action against Defendant All Day Beauty LLC ("All Day Beauty"), Defendant Jaime Mesa ("Mesa") (both doing business as "All Day Beauty LLC" on the website www.walmart.com ("Walmart")) and John Does 1-10 ("Doe Defendants") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C.

§ 1114; false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A); common law unfair competition; and tortious interference with contract.  These claims arise from Defendants' misappropriation of PCA Skin's trademarks in connection with Defendants' unlawful and unauthorized sale of PCA Skin's products on the Internet, including the sale of materially different and non-genuine products bearing PCA Skin's trademarks that are not subject to and interfere with PCA Skin's quality controls.  In support of its complaint, PCA Skin alleges as follows:

## PARTIES

1.      PCA Skin is a limited liability company, organized under the laws of the State of Arizona, with its principal place of business located in Scottsdale, Arizona.

2.      All Day Beauty is a limited liability company, organized under the laws of the State of Florida, with its principal place of business at 2200 N. Commerce Parkway, Suite #200, Weston, Florida, 33326.

3.      Mesa is an individual who, on information and belief, resides at 437 Lakeview Dr., Apt 204, Weston, Florida and may be served with process there or anywhere else he may be found.

4.      The true names, involvement, and capacities, whether individual, corporate, associated or otherwise of Doe Defendants, are unknown to PCA Skin.  Therefore, PCA Skin sues these defendants by a fictitious name.  PCA Skin is informed and believes, and on that basis alleges, that each of the Doe Defendants is responsible in some manner for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the true names, involvement, and capacities of these parties are ascertained, PCA Skin will seek leave to amend this Complaint accordingly.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  PCA Skin's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the State of Arizona are substantially related to its federal claims such

that they form part of the same case or controversy under Article III of the United States Constitution.

6.     This Court has personal jurisdiction because Defendants have expressly aimed tortious activities toward the State of Arizona and established sufficient minimum contacts with Arizona by, among other things, advertising and selling infringing PCA Skin products to consumers within Arizona through one or more highly interactive commercial websites with the knowledge that PCA Skin is located in Arizona and is harmed in Arizona as a result of Defendants' sales of infringing PCA Skin products to Arizona residents and residents of other states.  Defendants have known that PCA Skin is located in Arizona, among other reasons, because they have received cease-and-desist letters from PCA Skin and because the PCA Skin products they are selling identify PCA Skin as a company located in Scottsdale, Arizona.  PCA Skin's claims arise out of Defendants' sales of infringing PCA Skin products to Arizona residents.

## VENUE

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS
### PCA Skin & Its Trademarks

8.     PCA Skin develops skincare products and professional treatments that are sold exclusively through PCA Skin's website and PCA Skin's network of authorized sellers ("Authorized Sellers").

9.     PCA Skin devotes a significant amount of time, energy, and resources toward protecting the quality and value of its brand, products, name and reputation.  By distributing products exclusively through its website and its Authorized Sellers, PCA Skin is able to ensure the safety, well-being, and satisfaction of consumers and maintain the integrity and

reputation of the PCA Skin brand.  In the highly-competitive skincare market, quality is a fundamental part of the consumer's decision to purchase a product.

10. PCA Skin was founded in 1990.  Since that time, PCA Skin has been a worldwide leader in skin health education and in providing high quality products.

11. To promote and protect the PCA Skin brand, PCA Skin has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to, PCA SKIN® (U.S. Trademark Registration No. 3,415,304, 3,415,305, 3,406,253, 3,837,903, 2,865,758, and 2,863,801), CLINICALM® (U.S. Trademark Registration No. 4,929,004), EYEXCELLENCE® (U.S. Trademark Registration No. 4,747,412), C-STRENGTH® (U.S. Trademark Registration No. 4,447,028), SENSI PEEL® (U.S. Trademark Registration No. 2,571,997), PIGMENT BAR® (U.S. Trademark Registration No. 4,014,975), IDEAL COMPLEX® (U.S. Trademark Registration No. 4,942,890), and EXLINEA® (U.S. Trademark Registration No. 3,397,373) (collectively, the "PCA Skin Trademarks").

12. The registration for each of the PCA Skin Trademarks is valid, subsisting, and in full force and effect.

13. PCA Skin actively uses, advertises, and markets all of the PCA Skin Trademarks in commerce throughout the United States.

14. Customers recognize the PCA Skin Trademarks as being associated with products at the leading edge of research, innovation, and quality in the skincare industry.

15. Because of the effectiveness of PCA Skin products and the longevity of use of the PCA Skin name, consumers trust the PCA Skin name and PCA Skin products.

16. Due to the superior quality and exclusive distribution of PCA Skin products, and because PCA Skin is recognized as the source of these high-quality products, the PCA Skin Trademarks have substantial value.

**PCA Skin Exercises Strict Quality Controls over the Production and Distribution of Its Products and Limits Its Return Policy to Products That are Subject to Its Quality Controls**

17.     PCA Skin exercises strict quality controls over the distribution of its products.  PCA Skin's ability to implement these quality controls is essential to the integrity and safety of its products, as well as the value of its trademarks and other intellectual property.

18.     PCA Skin maintains quality controls over its products by selling its products exclusively through its website and through Authorized Sellers.  Apart from PCA Skin itself, only Authorized Sellers are permitted to sell PCA Skin products to end-user consumers.  Authorized Sellers are also prohibited from selling products to any person that an Authorized Seller knows, or has reason to suspect, will resell the products.

19.     All Authorized Sellers apply and follow numerous quality controls to ensure that only high quality products are sold to consumers.  Among other things, Authorized Sellers inspect products for damage, defect, and evidence of tampering or other non-conformance.  Authorized Sellers also inspect their inventory regularly for products that are expired or soon-to-be expired, and they do not sell to consumers any products that are expired, soon-to-be expired, damaged, tampered with, or otherwise of non-optimal quality.

20.     Authorized Sellers also store PCA Skin products at room temperature and out of direct sunlight, and they do not relabel, alter, modify, tamper with, or repackage any PCA Skin products or product labels, packaging, or documentation.

21.     PCA Skin also imposes limitations and requirements on Authorized Sellers that wish to sell PCA Skin products online.  First, Authorized Sellers are not permitted to sell on any website without PCA Skin's written approval.  If approval is granted, Authorized Sellers are prohibited from selling anonymously and must provide their name and full contact information, including name, address, and telephone number, on each website where they are approved to sell PCA Skin products.

22.     As a result of these measures, PCA Skin has knowledge of every website where PCA Skin products are sold by Authorized Sellers.  If PCA Skin identifies a problem

5

in the quality of products sold through any of these websites, PCA Skin can take action with the Authorized Seller to correct the problem and, if necessary, cease selling products to the Authorized Seller.

23.     PCA Skin has a return policy ("Return Policy") that allows consumers to return products within four months of the date of purchase if a consumer is dissatisfied with the quality of a product and has not improperly dispensed the product.  PCA Skin provides product credit equivalent to the value of products that are properly returned through the Return Policy.

24.     Only products that were purchased from PCA Skin or from Authorized Sellers are eligible for the Return Policy, because products sold by other sellers are not subject to PCA Skin's quality controls and PCA Skin has no ability to ensure the quality of products sold by non-Authorized Sellers.  The Return Policy is also not available for products sold by Authorized Sellers through unauthorized channels, such as unapproved websites.

**Defendants' Unauthorized Sale of PCA Skin Products on the Internet**

25.     Because the unauthorized sale of PCA Skin products over the Internet threatens the safety of consumers and the reputation and goodwill associated with the PCA Skin Trademarks, PCA Skin polices the sales of its products online.

26.     Through these efforts, PCA Skin discovered that products bearing the PCA Skin Trademarks are being sold on Walmart through a storefront called "All Day Beauty LLC."  PCA Skin has not approved any of its Authorized Sellers to sell on Walmart, much less through a Walmart storefront called "All Day Beauty LLC."

27.     No address information is provided on the "All Day Beauty LLC" storefront. As a result, PCA Skin was forced to conduct an investigation to determine the identities of the individual(s) or entity(ies) that operate the storefront.

28.     Through its investigation, PCA Skin identified All Day Beauty and Mesa as operators of the "All Day Beauty LLC" storefront.  PCA Skin identified All Day Beauty after discovering that the "All Day Beauty LLC" storefront states within its "Tax Policy"

that it is "based in Florida."  PCA Skin then discovered that "All Day Beauty, LLC" is the name of a limited liability company registered in Florida.  Additionally, Jaime Mesa is listed in public records as the manager of "All Day Beauty, LLC" and as sharing the same address as the mailing address for "All Day Beauty, LLC."

29.    Neither Mesa nor All Day Beauty are or have ever been Authorized Sellers.

30.    On or about September 22, 2017, PCA Skin, through counsel, sent a cease and desist letter to All Day Beauty and Mesa demanding that that they stop selling PCA Skin products and remove all PCA Skin products from their Walmart storefront and all other unauthorized websites.  PCA Skin did not receive any response to its letter, and products were not removed from the "All Day Beauty LLC" Walmart storefront.

31.    On or about December 11, 2017, PCA Skin, through counsel, sent another letter to All Day Beauty and Mesa demanding that they stop selling PCA Skin products. This letter also enclosed a draft complaint.  PCA Skin did not respond to its letter and products were not removed from the "All Day Beauty LLC" Walmart storefront.

32.    In July 2018, PCA Skin purchased a product from the "All Day Beauty LLC" storefront.  The package that was delivered included a return address of "2200 N COMMERCE PARKWAY, SUITE 200, WESTON FL 33326," which is the address for All Day Beauty and Mesa:



33.    As of the time of filing, Defendants continue to advertise and sell PCA Skin products through their "All Day Beauty LLC" storefront.

**Defendants' Sales of PCA Skin Products are Illegal**

34.    Defendants, without authorization from PCA Skin, have sold—and are currently selling—products bearing the PCA Skin Trademarks on Walmart.

35.    The products Defendants are selling are not genuine PCA Skin products because they are not subject to PCA Skin's quality controls and interfere with PCA Skin's

ability to exercise quality controls over products bearing the PCA Skin Trademarks. Because Defendants are not Authorized Sellers and sell anonymously on one or more online marketplaces, PCA Skin has no ability to exercise its quality controls over the products Defendants are selling. PCA Skin cannot audit Defendants to ensure they are complying with PCA Skin's quality controls and/or cease providing products to Defendants if they fail to abide by PCA Skin's quality controls.

36. The products Defendants are selling are also not genuine PCA Skin products because they are not eligible for PCA Skin's Return Policy.

37. The Return Policy is a material element of genuine PCA Skin products. Consumers considering whether to purchase PCA Skin products would find it relevant to their purchasing decision to know whether the product they are purchasing is eligible for the Return Policy. Consumers would also find it relevant whether a product was sold by an Authorized Seller that is subject to PCA Skin's quality controls.

38. Accordingly, the products Defendants are selling are materially different from genuine PCA Skin products.

39. Through their actions, Defendants are misleading and deceiving consumers into believing they are purchasing genuine PCA Skin products when, in fact, they are not.

40. Defendants' disregard of PCA Skin's cease and desist letters and their continued illegal sales of non-genuine products shows that Defendants are acting intentionally, willfully, and maliciously.

41. Upon information and belief, Defendants, through their storefront on the highly interactive Walmart marketplace website, accept and fulfill orders from Arizona residents for products bearing the PCA Skin Trademarks and ship infringing products bearing the PCA Skin Trademarks to persons located in Arizona through the regular course of business.

**Defendants are Tortiously Interfering with PCA Skin's Agreements
with Its Authorized Sellers**

42.     As discussed, PCA Skin sells its products exclusively through its website and to Authorized Sellers.

43.     PCA Skin has contracts with each of its Authorized Sellers that prohibit Authorized Sellers from selling PCA Skin products to third parties that Authorized Sellers know, or have reason to suspect, will resell the products.  Authorized Sellers are permitted to sell PCA Skin products only to end-user consumers who will consume the products rather than resell them.

44.     Authorized Sellers generally buy PCA Skin products in bulk from PCA Skin.

45.     The Defendants have sold a very high volume of PCA Skin products through their "All Day Beauty LLC" Walmart storefront.  PCA Skin has not itself sold any PCA Skin products to All Day Beauty or Mesa.  Thus, the only way Defendants could have obtained the volume of PCA Skin products they have resold is by purchasing their products in bulk from one or more Authorized Sellers.

46.     Accordingly, upon information and belief, Defendants purchased the PCA Skin products they resold on the Internet from one or more Authorized Sellers.

47.     Defendants have known that PCA Skin's contracts with its Authorized Sellers prohibit the sale of PCA Skin products to third parties—such as Defendants—for purposes of resale.

48.     Defendants have known this, among other reasons, because PCA Skin informed All Day Beauty and Mesa in a cease and desist letter dated September 22, 2017 that its contracts with Authorized Sellers prohibit Authorized Sellers from selling PCA Skin products to third parties for purposes of resale.  In its letter, PCA Skin also explained to All Day Beauty and Mesa that, every time they purchase PCA Skin products from an Authorized Seller and then resell the products, they have caused a breach of PCA Skin's contract with the Authorized Seller that sold the products to All Day Beauty and Mesa.

49.     In its September 22, 2017 letter, PCA Skin demanded that All Day Beauty and Mesa permanently stop reselling PCA Skin products, stop purchasing PCA Skin products for purposes of resale, and disclose the identities of all individuals and entities that have sold PCA Skin products to All Day Beauty and Mesa.  To date, Defendants have not disclosed any of their sources of PCA Skin products.

50.     As a result, PCA Skin does not currently know which specific seller(s) sold the PCA Skin products to Defendants that Defendants have resold through their "All Day Beauty LLC" storefront, and has no way to learn this information until it is able to take to discovery in this action.

51.     Based on the facts, however, that (A) PCA Skin sells its products exclusively through its website and to Authorized Sellers, (B) PCA Skin has not sold any products to All Day Beauty or Mesa, and (C) Defendants have sold a very high volume of PCA Skin products through their "All Day Beauty LLC" storefront, it is plausible and a reasonable inference that Defendants have purchased PCA Skin products they resold from one or more Authorized Sellers.  There is no other logical way that Defendants could have obtained the quantity of PCA products that they have resold.

52.     PCA Skin's contracts with its Authorized Sellers are a specific class of contract that Defendants caused Authorized Sellers to breach when they purchased PCA Skin products from Authorized Sellers.  PCA Skin has approximately 12,000 Authorized Sellers.

53.     Defendants have certainly not caused *every* Authorized Seller to breach its contract with PCA Skin.  Defendants did, however, cause the Authorized Sellers from which Defendants purchased PCA Skin products to breach their contracts with PCA Skin.

54.     Defendants know how they obtained the PCA Skin products they have resold and they are in exclusive possession of that information until PCA Skin is able to take discovery.  Permitting PCA Skin to learn the identity(ies) of the Authorized Seller(s) that sold products to Defendants through discovery does not produce any surprise or unfairness

to Defendants, who are on clear notice of the basis for PCA Skin's claim for tortious interference with contract.

55.     If PCA Skin learns through discovery that Defendants somehow did not obtain any of the PCA Skin products they resold from any Authorized Seller, it will dismiss its claim for tortious interference with contract.

<strong>Mesa's Liability</strong>

56.     On information and belief, Defendant Mesa is in control of, a principal of, and primarily responsible for Defendant All Day Beauty and its actions.

57.     PCA Skin asserts claims against Mesa in both his individual capacity, as well as his capacity as a corporate officer of All Day Beauty.

58.     Until it conducts discovery, PCA Skin cannot determine whether Mesa in his individual capacity, All Day Beauty, or both operate the "All Day Beauty LLC" storefront.

59.     Alternatively, on information and belief, Mesa directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing PCA Skin products by All Day Beauty.  Accordingly, Mesa is personally liable for infringing activities of All Day Beauty without regard to piercing the corporate veil.

60.     Alternatively, on information and belief, All Day Beauty follows so few corporate formalities and is so dominated by Mesa that it is merely an alter ego of Mesa. Accordingly, PCA Skin is entitled to pierce the corporate veil of All Day Beauty and hold Mesa personally liable for the infringing activities of All Day Beauty.

**PCA Skin Has Suffered Significant Harm as a Result of Defendants' Conduct**

61.     PCA Skin has suffered and will continue to suffer significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to their intellectual property, and damage to their existing and potential business relations.

62.     PCA Skin has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to their reputation, goodwill, business and customer relationships, intellectual property rights and brand integrity.

63.    PCA Skin is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell PCA Skin products, causing continued irreparable harm to PCA Skin's reputation, goodwill, relationships, intellectual property and brand integrity.

64.    Defendants' conduct was and is knowing, intentional, willful, malicious, wanton and contrary to law.

65.    Defendants' willful violations of the PCA Skin Trademarks and continued pattern of misconduct demonstrate intent to harm PCA Skin.

**<u>FIRST CAUSE OF ACTION</u>**
**Trademark Infringement**
**15 U.S.C. § 1114**

66.    PCA Skin re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

67.    PCA Skin is the owner of the PCA Skin Trademarks.

68.    PCA Skin has registered the PCA Skin Trademarks with the United States Patent and Trademark Office.

69.    The PCA Skin Trademarks are valid and subsisting trademarks in full force and effect.

70.    Defendants willfully and knowingly used, and continue to use, the PCA Skin Trademarks in commerce for purposes of selling PCA Skin products on the Internet without PCA Skin's consent.

71.    Defendants' use of the PCA Skin Trademarks in connection with the unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products offered for sale by Defendants are the same as the products legitimately bearing the PCA Skin Trademarks and originate from or are sponsored by, authorized by, or otherwise connected with PCA Skin when they are not.

72.    Defendants' use of the PCA Skin Trademarks in connection with the sale of PCA Skin products is likely to cause confusion, cause mistake, or deceive because it

suggests that the products Defendants offer for sale are genuine and authentic PCA Skin products.

73.    The products sold by Defendants are not, in fact, genuine and authentic PCA Skin products.  The products sold by Defendants are materially different because, among other reasons, they are not subject to PCA Skin's quality controls, they interfere with PCA Skin's ability to exercise quality controls, and they do not come with PCA Skin's Return Policy.

74.    Defendants' unauthorized use of the PCA Skin Trademarks has materially damaged the value of the PCA Skin Trademarks, caused significant damage to PCA Skin's business relations, and infringed on PCA Skin's trademarks.

75.    As a proximate result of Defendants' actions, PCA Skin has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

76.    PCA Skin is entitled to recover its damages caused by Defendants' infringement of the PCA Skin Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

77.    Pursuant to 15 U.S.C. § 1116, PCA Skin is entitled to injunctive relief enjoining Defendants' infringing conduct.

78.    Pursuant to 15 U.S.C. § 1117(a), PCA Skin is entitled to enhanced damages and an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(B)

79.    PCA Skin re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

80.    PCA Skin is the owner of the PCA Skin Trademarks.

81.    PCA Skin has registered the PCA Skin Trademarks with the United States Patent and Trademark Office.

82. The PCA Skin Trademarks are valid and subsisting trademarks in full force and effect.

83. Defendants willfully and knowingly used, and continue to use, the PCA Skin Trademarks in interstate commerce, including through their product listings on Walmart, for purposes of advertising, promoting, and selling products bearing the PCA Skin Trademarks without PCA Skin's consent.

84. Defendants' advertisements and promotions of their products unlawfully using the PCA Skin Trademarks have been disseminated to the relevant purchasing public.

85. Defendants' use of the PCA Skin Trademarks in connection with the unauthorized advertising, promotion, and sale of Defendants' products misrepresents the nature, characteristics, qualities, and origin of Defendants' products.

86. Defendants' use of the PCA Skin Trademarks in connection with the unauthorized advertising, promotion, and sale of Defendants' products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic PCA Skin products and originate from or are sponsored by, authorized by, or otherwise connected with PCA Skin when they are not.

87. The products Defendants advertise, promote, and sell are not genuine PCA Skin products because the products are not authorized for sale by PCA Skin, are not subject to PCA Skin's quality controls, interfere with PCA Skin's quality controls, and are materially different from genuine PCA Skin products.

88. Defendants' unauthorized and deceptive use of the PCA Skin Trademarks is material and likely to influence customers to purchase the products Defendants sell, because consumers are likely to believe that the products Defendants advertise using the PCA Skin Trademarks are genuine PCA Skin products that are subject to PCA Skin's quality control requirements and come with the other benefits associated with genuine PCA Skin products when they do not.

89. Defendants' unauthorized use of the PCA Skin Trademarks in advertising, and otherwise, infringes on the PCA Skin Trademarks.

90.     As a proximate result of Defendants' actions, PCA Skin has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

91.     PCA Skin is entitled to recover its damages caused by Defendants' infringement of the PCA Skin Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

92.     Pursuant to 15 U.S.C. § 1116, PCA Skin is entitled to injunctive relief enjoining Defendants' infringing conduct.

93.     Pursuant to 15 U.S.C. § 1117(a), PCA Skin is entitled to enhanced damages and an award of attorneys' fees.

### THIRD CAUSE OF ACTION
### Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A)

94.     PCA Skin re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

95.     PCA Skin is the owner of the PCA Skin Trademarks.

96.     PCA Skin has registered the PCA Skin Trademarks with the United States Patent and Trademark Office.

97.     The PCA Skin Trademarks are valid and subsisting trademarks in full force and effect.

98.     Defendants have willfully and knowingly used, and continue to use, the PCA Skin Trademarks in interstate commerce for purposes of selling PCA Skin products without the consent of PCA Skin.

99.     Defendants' use of the PCA Skin Trademarks in connection with the unauthorized sale and advertising of products is likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship or approval of PCA Skin products because it suggests that the products Defendants offer for sale originate from, or are sponsored, authorized, or otherwise connected with PCA Skin when they are not.

100.   The products sold by Defendants are not genuine and authentic PCA Skin products.  The products sold by Defendants are materially different because, among other reasons, they are not subject to PCA Skin's quality controls, they interfere with PCA Skin's ability to exercise quality controls, and they do not come with PCA Skin's Return Policy.

101.   Defendants' unauthorized sale of products bearing the PCA Skin Trademarks and unauthorized use of the PCA Skin Trademarks in advertising materially damages the value of the PCA Skin Trademarks and causes significant damage to PCA Skin's business relations.

102.   Defendants' unauthorized sale of products bearing the PCA Skin Trademarks and unauthorized use of the PCA Skin Trademarks in advertising infringes on the PCA Skin Trademarks.

103.   As a proximate result of Defendants' actions, PCA Skin has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

104.   PCA Skin is entitled to recover its damages caused by Defendants' infringement of the PCA Skin Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

105.   Pursuant to 15 U.S.C. § 1116, PCA Skin is entitled to injunctive relief enjoining Defendants' infringing conduct.

106.   Pursuant to 15 U.S.C. § 1117(a), PCA Skin is entitled to enhanced damages and an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### Common Law Unfair Competition

107.   PCA Skin re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

108.   PCA Skin is the owner of the PCA Skin Trademarks.

109.   PCA Skin has registered the PCA Skin Trademarks with the United States Patent and Trademark Office.

110.   The PCA Skin Trademarks are valid and subsisting trademarks in full force and effect.

111.   Defendants willfully and knowingly used, and continue to use, the PCA Skin Trademarks in commerce for purposes of selling PCA Skin products on the Internet without PCA Skin's consent.

112.   Defendants' use of the PCA Skin Trademarks in connection with the unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products offered for sale by Defendants are the same as the products legitimately bearing the PCA Skin Trademarks and originate from or are sponsored by, authorized by, or otherwise connected with PCA Skin when they are not.

113.   Defendants' use of the PCA Skin Trademarks in connection with the sale of PCA Skin products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic PCA Skin products.

114.   The products sold by Defendants are not, in fact, genuine and authentic PCA Skin products.  The products sold by Defendants are materially different because, among other reasons, they are not subject to PCA Skin's quality controls, they interfere with PCA Skin's ability to exercise quality controls, and they do not come with PCA Skin's Return Policy.

115.   Defendants' unauthorized use of the PCA Skin Trademarks has materially damaged the value of the PCA Skin Trademarks, caused significant damage to PCA Skin's business relations, and infringed on PCA Skin's trademarks.

116.   As a proximate result of Defendants' actions, PCA Skin has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

117.   PCA Skin is also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

## FIFTH CAUSE OF ACTION
### Tortious Interference with Contract

118.   PCA Skin re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.   PCA Skin sells its products exclusively through its website and to Authorized Sellers.

120.   PCA Skin has entered into contracts with each of its Authorized Sellers. These agreements prohibit Authorized Sellers from selling PCA Skin products to third parties, such as Defendants, that Authorized Sellers know, or have reason to suspect, will resell the products.  Authorized Sellers are permitted to sell PCA Skin products only to end-user consumers who will consume the products rather than resell them.

121.   Authorized Sellers generally buy PCA Skin products in bulk from PCA Skin.

122.   The Defendants have sold a very high volume of PCA Skin products through their "All Day Beauty LLC" Walmart storefront.

123.   PCA Skin has not itself sold any PCA Skin products to All Day Beauty or Mesa.

124.   Based on these facts, it is plausible and a reasonable inference that Defendants have purchased PCA Skin products they resold from one or more Authorized Sellers.  There is no other logical way that Defendants could have obtained the quantity of PCA products that they have resold.

125.   Defendants have known that PCA Skin's agreements with its Authorized Sellers prohibit Authorized Sellers from selling PCA Skin products to third parties, such as Defendants, for purposes of resale.

126.   Defendants have known this, among other reasons, because PCA Skin informed All Day Beauty and Mesa in a cease and desist letter dated September 22, 2017 that its contracts with its Authorized Sellers prohibit Authorized Sellers from selling PCA Skin products to third parties who intend to resell them.  In its letter, PCA Skin also explained to All Day Beauty and Mesa that, every time they purchase PCA Skin products

from an Authorized Seller and then resell the products, they have caused a breach of PCA Skin's contract with the Authorized Seller that sold the products to All Day Beauty and Mesa.

127.   Defendants have willfully, intentionally, and knowingly interfered with the agreements between PCA Skin and its Authorized Sellers by purchasing PCA Skin products from Authorized Sellers for the purpose of reselling them on the Internet.

128.   Defendants' actions were intended to, and did, disrupt PCA Skin's contractual and business relationships with its Authorized Sellers.

129.   Defendants have acted with a wrongful purpose by inducing Authorized Sellers to breach their contractual agreements with PCA Skin by selling PCA Skin products to Defendants that Defendants intended to, and did, resell on the Internet without PCA Skin's approval.

130.   Defendants have no legal right, privilege, or justification for their conduct.

131.   PCA Skin's contracts with its Authorized Sellers are a specific class of contract that Defendants caused Authorized Sellers to breach when they purchased PCA Skin products from Authorized Sellers.  PCA Skin has approximately 12,000 Authorized Sellers.

132.   Defendants have certainly not caused every Authorized Seller to breach its contract with PCA Skin.  Defendants did, however, cause the Authorized Sellers from which Defendants purchased PCA Skin products to breach their contracts with PCA Skin. Because Defendants have refused to disclose how they have obtained the PCA Skin products they have resold, PCA Skin can learn the specific identities of the Authorized Seller(s) that sold products to Defendants only by taking discovery in this action.

133.   Defendants' actions have caused injury to PCA Skin for which PCA Skin is entitled to compensatory damages in an amount to be proven at trial.

134.   As a proximate result of Defendants' actions, PCA Skin has suffered damage including loss of sales and damage to its existing business relations.

135.    PCA Skin is also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

### PRAYER FOR RELIEF

WHEREFORE, PCA Skin prays for relief and judgment as follows:

A.    Judgment in favor of PCA Skin and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, and restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

    i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all PCA Skin products,

    ii)    Prohibiting the Enjoined Parties from using any of the PCA Skin Trademarks in any manner, including advertising on the Internet,

    iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all PCA Skin products as well as any products bearing any of the PCA Skin Trademarks,

    iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the PCA Skin Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

v)  Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of PCA Skin's products, or any of the PCA Skin Trademarks,

vi)  Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the PCA Skin Trademarks which associate PCA Skin's products or the PCA Skin Trademarks with the Enjoined Parties or the Enjoined Parties' website,

vii)  Requiring the Enjoined Parties to take all action to remove the PCA Skin Trademarks from the Internet, including from the website www.walmart.com;

C.  An award of attorneys' fees, costs, and expenses; and

D.  Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PCA Skin demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 22nd day of January, 2019.

KERCSMAR & FELTUS PLLC

By: *s/ Gregory Collins*
Gregory B. Collins
Molly Rogers
7150 E. Camelback Road, Suite 285
Scottsdale, Arizona 85251

*Attorneys for Plaintiff Physicians Care Alliance LLC d/b/a PCA Skin*